## Potter's Estate.

*Guardian and ward—Sale of ward's real estate—Acceptance of notes in payment—Nonpayment of notes—Liability of guardian for purchase-money.*

A guardian was authorized to sell his ward's real estate upon his petition setting forth under oath that he had been offered $1,800 therefor, and that said price was better and higher than could be obtained at public sale. The guardian made return stating that he had sold the property for $1,800 and the deed which was acknowledged in open court certified to the receipt of such amount as having been paid by the purchaser to the guardian at and before the execution and delivery thereof. After the ward became of age, the guardian filed an account charging himself with only $1,200, the amount of promissory notes which he stated he had received from the purchasers in payment and claiming credit for the amount of said notes as being uncollectible. The Orphans' Court refused to surcharge the guardian with the purchase-money of the property on the ground that he had acted in good faith. *Held,* reversing the Orphans' Court's decree, that the guardian should be surcharged with the purchase-money of the property with interest from the date of sale.

Argued Feb. 24, 1915. Appeal, No. 482, Jan. T., 1914, by Frankie B. Potter, now Frankie B. Clark, from decree of O. C. Lackawanna Co., Series B, No. 222, dismissing exceptions to guardian's account in Estate of Frankie B. Potter, Minor. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Exceptions to final account of W. S. Huslander, guardian.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions.   Frankie B. Pot-ter, now Frankie B. Clarke, appealed.

*Errors assigned* were in dismissing the exceptions.

*Will N. Leach,* for appellant.

*James J. O'Malley,* for appellee.

OPINION BY MR. CHIEF JUSTICE BROWN, April 19, 1915:

W. L. Potter died intestate in 1897, leaving a widow and one child, who was then eight years of age.   Within two weeks from her father's death W. S. Huslander was appointed her guardian.   The deceased was seized at the time of his death of an undivided one-third interest in certain real estate, and, in the latter part of 1904, the appellee presented his petition to the court below, setting forth that an offer had been made to him for the purchase of the interest of his ward in the real estate of her deceased father, for the sum of $1,800 and that the petitioner believed the price or sum so offered was better and higher than could be procured, under the circumstances, at a public sale.   An order was duly made, authorizing him to sell for the said sum, and to it he made return that he had sold in pursuance of it and on the terms prescribed in it.   His petition was accompanied by two affidavits, setting forth that the averments in it were true.

The appellee failed to file an account as guardian after his ward attained her majority, and, in 1912, when she was twenty-three years of age, she presented a petition for a citation commanding him to appear and show cause why he should not account.   In answer to this he averred that, notwithstanding what he had set forth in his petition for the order of sale and in his return to the same, and in his deed, acknowledged in open court and delivered to the purchaser, he had not received any cash on account of the purchase-money, but had taken from the vendees two promissory notes of a

driving park association, amounting to $1,500, which he had never been able to collect, and he therefore had nothing to account for to his ward. He subsequently presented a petition to the court below, asking that the decree confirming the sale of his ward's interest in the real estate should be opened, reviewed and amended, so that the consideration named in the petition for the order of sale might be corrected, and he relieved from the charge of $1,800 and interest thereon. This petition was dismissed. In the meantime he had been ordered to file his account, which he did, in July, 1913, charging himself with only $1,200, the amount of the notes which he then said he had received from the purchasers of the ward's interest in her father's estate, and asking credit for the amount of them as having been uncollectible. Exceptions were filed to this account, the first two to the failure of the accountant to charge himself with the sum of $1,800, with interest from December 31, 1904, the purchase-money for the real estate of the said minor, as shown by the petition of her guardian and his return to the order of sale. These two exceptions, which are the only ones we need consider on this appeal, were dismissed on the finding that there had been no wilful default or bad faith, or gross negligence, on the part of the guardian, and that the two notes, amounting to $1,200, which he had taken in payment of the purchase-money, were supposed to be good at the time they were taken. The account, as confirmed upon the dismissal of the exceptions, shows a small indebtedness on the part of the appellant to the appellee.

We know of no precedent—and there certainly is no authority—for the action of the court below. The question before it was not as to the liability of a trustee for failure to exercise common skill, common prudence and common caution in the management of a ward's estate, and Calhoun's Est., 6 Watts 185, and Nyce's Est., 5 W. & S. 254, the two cases upon which the court relied as authority in support of its decree relieving the guardian

from liability, are without application. If, in his petition for an order to sell his ward's interest in her father's real estate at private sale, the appellee had set forth the terms upon which he now says the offer to purchase was made, the order to sell would not have been awarded, but would undoubtedly have been denied. It is hardly conceivable that the appellee—a member of the bar—would have thought of asking for an order to sell for stock in a driving park association. The record which now confronts him is one of his own making, and, upon it, his ward had a right to rely when she attained her majority and when she called upon him to account. We need but repeat in due order what that record discloses to show not only the clear error of the court below, but the danger which would constantly threaten wards and cestuis que trustent if its action should be sustained. The guardian presented his petition to the court, setting forth, under oath, (1) that he had been offered $1,800 for his ward's interest in her father's estate; and (2) that the said price was better and higher than could be obtained at public sale. He fortified this petition to the court by two affidavits, setting forth that its terms were true. The order of sale directed him to sell his ward's interest upon the payment of the sum of $1,800, on the execution and delivery of the deed. To this order he made return, under oath, that he had sold the property for $1,800 in pursuance of the terms of the order, and prayed that the sale might be confirmed and that he be permitted to acknowledge a deed to the purchasers, in accordance with the act of assembly of April 18, 1853. The deed which he executed he acknowledged in open court, and in it he certified to the receipt of $1,800, as having been paid to him by the purchasers at and before the execution and delivery of the deed. To sustain the decree of the court below, in the face of all this, would be trifling with and summarily setting aside solemn judicial records, made up at the instance of the appellee, and vouching for the safety of his ward's estate. To sustain

it would be to establish an appalling precedent for the imperilling of trusts. The claim of the appellee for immunity from liability to his ward is not, under the circumstances, to be entertained for an instant. The law, public policy and the interests of helpless wards alike forbid it. If the decree to which he must bow seems harsh to him, he must remember not only this, but that the record of his liability, is of his own making.

The decree of the court below is reversed and the record remitted. The first two exceptions to appellee's account, as filed, are sustained and he is directed to restate the same in accordance with the view expressed in this opinion, and to pay the costs below and here.